STATE ex rel. Louis HAAK, et al., Appellants,

v.

BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 625, ST. PAUL, Minnesota, Respondent.

No. C1–83–1074.

Supreme Court of Minnesota.

May 3, 1985.

Rehearing Denied July 24, 1985.

Dale G. Swanson, Forest Lake, for appellants.

Stephen D. Gordon, Thomas B. Hatch, St. Paul, for respondent.

Heard, considered, and decided by the court en banc.

PETERSON, Justice.

Appellants Kent Hinshaw, Ray Holzworth, Louis Haak, and Irene Cummings appeal from a district court judgment refusing to set aside their demotions but instead remanding the matter to respondent, St. Paul Board of Education (board), for further hearings and findings. We affirm in part and reverse and remand in part.

As a result of declining enrollment and a budget deficit of almost $8 million, the board, at its February 2, 1982, meeting, eliminated 36 administrative positions and incorporated the duties and responsibilities into 15 new administrative positions. The Superintendent of St. Paul Public Schools issued notices of discontinuance of the positions to persons affected by the board's action and informed them that Minn.Stat. § 125.17 (1984) provided for individual hearings regarding the proposed demotions.

Appellants are four individuals whose administrative positions were eliminated:

Kent Hinshaw was Supervisor of Science. His position and those of ten other curriculum supervisors were eliminated and the duties consolidated into seven new positions: five Assistant Directors of Curriculum, a Director of Elementary Curriculum, and a Director of Secondary Curriculum.

Ray Holzworth was Supervisor of Special Education, Special Learning, and Behavior Problems. His and most other supervisory positions in special education were eliminated and the duties reassigned to a new Director of Special Education with two assistant directors, one for instructional programs and the other for related and support services.

Louis Haak was Supervisor of Administrative Research. His position was eliminated, as was the position of Supervisor of Research and Evaluation, and the duties were reassigned to a new Assistant Director of Research, Evaluation, and Teaching and to a new Director of Administrative Services.

Irene Cummings was Associate Administrator of Student Accounting. Her position was eliminated, together with that of the Supervisor of Student Accounting, and the duties were assigned to a new Assistant Director of Student Accounting.

Appellants elected to have individual, private hearings, held before three different state hearing examiners. The hearing examiners uniformly held that the board was justified in discontinuing the positions due to lack of pupils and decreased enrollment. In each case the hearing examiner went further, however, and over objection ruled

that appellant should not be demoted but rather should be reassigned to a new position if appellant was the most senior person qualified for it, *i.e.*, if appellant was the most senior person holding the requisite licensure for the position.

The recommendations of the hearing examiners were rejected by the board. The board ruled that the issues of reassignment to new positions were not issues before the examiners in the demotion hearings and, even if they were, that reassignment rights under section 125.17, subd. 11, on the basis of seniority alone did not govern because the new positions were "'promotional." Concluding that it was not required to reassign appellants to any of the new positions, the board proceeded to follow its normal procedure for filling promotional positions —namely, posting notices inviting applications and hiring new people in accordance with its criteria for promotional positions. Appellants applied for the new positions but were unsuccessful. The board then demoted Kent Hinshaw to high school teacher, Ray Holzworth to business education teacher, Louis Haak to high school counselor, and Irene Cummings to elementary school facilitator.

The four appealed to the district court by writ of certiorari, and the cases were consolidated for hearing. The district court, by order dated July 25, 1983, found that the record was insufficient to support the determinations of either the hearing examiners or the board and, indeed, was insufficient to resolve the dispositive issues. Accordingly, the district court remanded the cases to take further evidence on three issues:

1. What department the "old" positions were in.
2. Whether the "new" positions hold a "higher" relative place, rank and standing than the "old" positions.
3. Whether "reassignment" rights can be applied to "bump" into a "higher" position.

Instead of participating in the board hearings on remand, appellants filed this appeal.

## I.

The first issue is whether Minn.Stat. § 125.17 (1984), the Teacher Tenure Act for cities of the first class, applies to appellants. The board contends that the Act applies only to "teachers" and that appellants are administrators, not teachers.[1] Appellants claim they are teachers within the meaning of the statute but, even if they are not, that the board either waived or is estopped from asserting that they are not teachers. The district court ruled that by according appellants individual demotion hearings pursuant to the Act, the board had waived its claim that the Act was inapplicable.

■ We hold that neither waiver nor estoppel precludes the board from asserting that appellants are not "teachers" under the Act. Waiver is the voluntary relinquishment of a known right. *State ex rel. Johnson v. Independent School Dist. No. 810*, 260 Minn. 237, 246, 109 N.W.2d 596, 602 (1961). The board did not voluntarily relinquish a right; by granting the administrators hearings before demotion, the board was at most affording them procedural safeguards regardless of whether the Act applied. The case the trial court relied upon as establishing waiver, *Winter v. Farmers Educ. & Coop. Union*, 259 Minn. 257, 107 N.W.2d 226 (1961), is inapposite, since the board refused to address the reassignment issue at the demotion hearings and can hardly be said to have elected the theory upon which it would try that issue.

■ Nor does estoppel apply. The administrators have not changed their posi-

1. Minn.Stat. § 125.17, subd. 1(a) (1984), provides:

The term "teacher" includes every person regularly employed, as a principal, or to give instruction in a classroom, or to superintend or supervise classroom instruction, or as placement teacher and visiting teacher. Persons regularly employed as counselors and school librarians shall be covered by these sections as teachers if licensed as teachers or as school librarians.

tions or relied to their detriment on any representation by the board as to their tenure rights. To deny estoppel is not unfair to the administrators; to grant it would frustrate the public intent of allowing school districts flexibility in the management of their affairs. *See Mesaba Aviation v. County of Itasca*, 258 N.W.2d 877 (Minn.1977) (estoppel may be asserted against the state if justice requires). Accordingly, we reverse the trial court's finding of waiver as clearly erroneous.

■ This then leads to the issue whether administrators are "teachers" as defined by the Act.[2] School personnel not expressly enumerated in the Act are not entitled to its protection. *Board of Educ. v. Sand*, 227 Minn. 202, 207, 34 N.W.2d 689, 693 (1948). Appellants do not come within any of the enumerated categories of persons who are to be deemed teachers and therefore do not qualify for the protections of the Act unless they are "regularly employed * * * to superintend or supervise classroom instruction." *See* Minn.Stat. § 125.17, subd. 1(a) (1984). We have construed this phrase in *Sand*, 227 Minn. 202, 34 N.W.2d 689, and *Eelkema v. Board of Educ.*, 215 Minn. 590, 11 N.W.2d 76 (1943). In *Eelkema* we said:

> The word "superintend" as used in the phrase "superintend or supervise classroom instruction" in the tenure act is plainly used solely in connection with the phrase "class-room instruction" and not with reference to the broad duties and responsibilities of a superintendent of schools. Its sense is very like that of "supervise" which follows it. A superintendent of schools may be said to superintend class-room instruction, but that is a small part of his duties and responsibilities. He would never be designated as a "superintendent of class-room instruction."

*Id.* at 594–95, 11 N.W.2d at 78. In *Sand*, following the *Eelkema* analysis, we held that an administrative assistant to a school superintendent was not a teacher within the Act. We pointed out that the administrator's duties included no classroom teaching and little or no supervision of classroom instruction but, rather, involved research and statistical work incidental to school administration.

Applying these settled principles to this record, it is clear that as a matter of law Louis Haak, Supervisor of Administrative Research, and Irene Cummings, Associate Administrator of Student Accounting, are not "teachers" and are not covered by the Teacher Tenure Act. As to Kent Hinshaw, Supervisor of Science, and Ray Holzworth, Supervisor of Special Education, Special Learning, and Behavior Problems, the record contains a factual dispute, and we do not make findings of fact. On remand, further evidence should be presented and a determination made.

## II.

Ordinarily, this case would be at an end for Louis Haak and Irene Cummings because, by its terms, the Teacher Tenure Act does not apply to them. If on remand it should be determined that Kent Hinshaw and Ray Holzworth also are not teachers covered by the Act, their cases as well would ordinarily come to an end.

■ Appellants contend, however, that even if the statutory definition of teacher precludes them from the protection of the Act, they are nonetheless entitled to that protection under the collective bargaining agreement between the school district and the Association of Central Administrative Personnel, appellants' exclusive bargaining representative. Article XIV of their 1981–83 agreement provides:

**2.** Appellants argue that the board failed to preserve the issue of the applicability of the Teacher Tenure Act to school administrators by not filing a notice of review under Minn.R.Civ. App.P. 106. Appellants' appeal, however, is from an order remanding the entire proceed-

ings to the board for further proceedings, a kind of interlocutory order, so that all matters before the trial court are before us. In any event, we choose to consider the issue under Minn.R.Civ. App.P. 102.

The School District must maintain and preserve the contract tenure rights established in the prior Agreement between the Saint Paul Board of Education and the Congress of Saint Paul School Administrators and recognized by the courts.

We are unable to determine this issue because the "prior Agreement" referred to in the 1981–83 Master Contract is not part of the record here. We therefore have no way of knowing what kind of tenure is being claimed.

We believe the fairest way to handle this is to remand all four cases to the district court for proper development of the record and a determination of what tenure rights, if any, appellants may have by reason of their collective bargaining agreement.

### III.

Assuming that some or all of appellants have tenure rights, either under the Act or by their collective bargaining agreement, the next issue is whether, their "old" positions having been eliminated, appellants are entitled to be reassigned to one of the "new" positions created by the board. The trial court did not decide the issue but remanded to the board for further development of the record. We affirm this remand.

The parties apparently agree that subdivision 11 of section 125.17 sets out any "reassignment" rights that appellants may have. That subdivision provides in part:

Any teacher whose services are terminated on account of discontinuance of position or lack of pupils shall receive first consideration for other positions in the district for which that teacher is qualified. In the event it becomes necessary to discontinue one or more positions, in making such discontinuance, teachers shall be discontinued in any department in the inverse order in which they were employed.

Minn.Stat. § 125.17, subd. 11(a) (1984).

In the memorandum accompanying its order of remand, the trial court stated that the record lacked evidence on what constituted a "department" for purposes of subdivision 11 and that such a determination must be made, citing *McManus v. Independent School Dist. No. 625*, 321 N.W.2d 891, 893 (Minn.1982) ("[t]he decision is first made as to the department in which reductions must be made"). The trial court also noted that the record was vague as to how the duties of the "old" positions had been realigned in the "new" positions and that it was therefore impossible to tell if the "new" positions held a "'higher' relative place, rank and standing than the 'old' positions." *See State ex rel. Ging v. Board of Educ.*, 213 Minn. 550, 585, 7 N.W.2d 544, 562 (1942), *overruled on other grounds, Foesch v. Independent School Dist. No. 646*, 300 Minn. 478, 223 N.W.2d 371 (1974). As the trial court correctly asserted, merely relabeling a position proves nothing. The trial court further noted that if it should develop on remand that a "new" position was "higher" than an "old" position, the question would then arise whether subdivision 11 reassignment rights entitled an appellant to bump into the higher or "promotional" position. The trial court determined that this apparently would be an issue of first impression that it was premature to address.

█ We think the trial court's disposition of this matter by remand was sensible. The important issues presented here cannot be decided in a factual vacuum. It may well be, for example, that at the high administrative level involved here, the concept of "departments" as used in subdivision 11 will be of limited use, but we cannot say until we have the facts. The extent to which reassignment rights, as delineated in *Berland v. Special School Dist. No. 1*, 314 N.W.2d 809 (Minn.1981), and *McManus*, 321 N.W.2d 891, might be extended to administrative staff is difficult to discuss in the abstract. Moreover, if any appellants fail to meet the threshold issue of establishing that they are subject to the protections of the Teacher Tenure Act, our discussion on the merits of reassignment rights may be, at least in part, moot.

Even so, we venture to make two observations. The parties have raised and briefed certain issues that may present problems on remand and that in the interests of judicial economy should be commented on here.

First, the inquiry whether the "new" positions differ from the "old" positions should focus on such matters as the placement of the position within the overall organizational structure; the functions and responsibilities of the position, considering both how old duties are expanded or contracted and whether new duties are added; and the qualifications needed to carry out the responsibilities of the position. The inquiry is, of course, concerned with substance, not form.

■ Second, as a general proposition, it would appear that a person whose position has been discontinued may have reassignment rights to positions that are of similar place, rank, and standing and for which the person is qualified. We hesitate to elaborate further on the proposition without first having a developed factual record.

■ We believe, in addition, that a person whose position has been discontinued does not have any right to reassignment to a new "promotional" position, *i.e.*, a new position that involves added duties and responsibilities and occupies a higher place, rank, and standing. Appellants argue that section 125.17, subd. 11, in dealing with reassignment rights, does not differentiate between promotional and nonpromotional positions and, therefore, that the legislature must have intended reassignment rights to apply to both. We disagree. The history and purpose of the Teacher Tenure Act disclose that the Act has in mind not only the prevention of arbitrary demotions and discharges of teachers but also, balanced against this purpose, "the need to allow the school board enough latitude to administer effectively the operation of the public schools." *Hudson v. Independent School Dist. No. 77*, 258 N.W.2d 594, 597 (Minn.1977); *see also Ging*, 213 Minn. at 568, 7 N.W.2d at 555. Here, where we are considering high administrative, nonclass-

room posts affecting school management, we conclude that imposition of reassignment rights to promotional positions would be unduly disruptive of managerial discretion and therefore hold that the reassignment rights of the Teacher Tenure Act do not apply to promotional positions.

We accordingly affirm the trial court's remand. We might add that it appears that the factual record can best be developed at the school board level, with the hearing conducted by a hearing examiner. This record will then go to the district court. The district court, if need be, may supplement this record with the taking of further evidence as may bear on the legal rulings it will have to make.

### IV.

■ Appellants claim the trial court erred in not setting aside their demotions and reinstating them in administrative positions pending remand and final disposition of their cases. We disagree. To grant reinstatement would be to decide that the "new" positions are not really new, the very issue of this litigation. Concededly, appellants' old positions were properly terminated. The trial court did not err.

■ We also need to comment on the scope of the hearing provided appellants. Disagreement on this issue is largely the cause of the inadequate record before us. A teacher is entitled to a hearing on discontinuance of position for lack of pupils or decreased enrollment. Minn.Stat. § 125.17, subd. 4(5) (1984). The statute is silent regarding a hearing for reassignment of a teacher whose position has been discontinued. At the "demotion" hearings before the hearing examiners, the board took the position that the issue of reassignment rights was not before the examiners, but the examiners disagreed. Technically, the board was correct, but it seems to us that at some stage a teacher is entitled to a hearing on reassignment if requested and that the opportune time for such a hearing is at the "discontinuance" hearing. In *State ex rel. Dreyer v. Board of Educ.*, 344

N.W.2d 411 (Minn.1984), we recommended that under the unique circumstances of that case, the reassignment issue ought to have been addressed at the demotion hearing. We now conclude, and so hold, that in most cases, reassignment issues should be considered in the demotion hearing.[3]

Affirmed in part and reversed and remanded in part.

**3.** It might well be that in some instances the issues may be more manageable if bifurcated, with a first hearing to consider whether positions were properly discontinued and then a separate hearing devoted to each teacher's right to reassignment. Bifurcation may not be useful where, as in this case, the question of demotion is not contested.