**John E. McMANUS, Jr., Petitioner, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 625, Respondent.**

No. 81–1148.

Supreme Court of Minnesota.

July 16, 1982.

Rehearing Denied Aug. 31, 1982.

Larkin, Hoffman, Daly & Lindgren, David G. Moeller and James Miley, Minneapolis, for appellant.

Richard J. Battis and Timothy W. J. Dunn, St. Paul, for respondent.

SCOTT, Justice.

John E. McManus, Jr., appeals from the order of the Ramsey County District Court affirming findings of fact and the action of the respondent school district in demoting appellant from the position of principal to the position of assistant principal. Appellant claims error in the determination of seniority under Minn.Stat. § 125.17, subd. 11 (1980). We reverse.

Appellant was a secondary school principal in respondent Independent School District No. 625 in St. Paul. He had been employed continuously by respondent since September 3, 1956, when he was employed as a secondary school social studies teacher. On August 31, 1970, appellant was appointed to the position of assistant principal and on August 11, 1975, he was appointed to the position of principal.

Because of a decline in school enrollment, on March 3, 1981, the school board of respondent school district passed a resolution eliminating the positions of four secondary principals. Proper procedures of notice and hearing were followed and on June 25, 1981, the board made findings of fact and demot-

ed appellant from principal to assistant principal.

The board followed its own written policy and demoted the principals in the inverse order of their employment *as principals*. When appellant and another principal had the same date of appointment as principals, the tie was broken by considering the length of time each had served as assistant principal. Appellant claims the applicable statute, Minn.Stat. § 125.17, subd. 11 (1980), requires the demotion to be in the inverse order of employment *by the school district*.

The dispositive issue is whether the action of respondent school district in demoting appellant was contrary to the provisions of Minn.Stat. § 125.17 (1980). Appellant also questions the constitutionality of section 125.17. Appellant does not challenge the necessity of discontinuing the position and makes no objection to the procedural formalities followed.

Appellant's demotion is controlled by section 125.17 of Minnesota Statutes, the Teacher Tenure Act for cities of the first class. Appellants comes within the definition of "teacher," which includes "every person regularly employed, as a principal, or to give instruction in a classroom, or to superintend or supervise classroom instruction." Minn.Stat. § 125.17, subd. 1(a) (1980). The language to be interpreted is in subdivision 11:

*Services terminated by discontinuance or lack of pupils; preference given.* Any teacher whose services are terminated on account of discontinuance of position or lack of pupils shall receive first consideration for other positions in the district for which she is qualified. In the event it becomes necessary to discontinue one or more positions, in making such discontinuance, teachers shall be discontinued in

any department in the inverse order in which they were employed.

Minn.Stat. § 125.17, subd. 11 (1980).

Appellant claims "employed" means employed by the district as a teacher in any capacity. Respondent contends "employed" modifies department and that discontinuance shall be in the inverse order in which the teacher was employed in that department, position, or rank.

We find this case is controlled by our interpretation of the same statute in *Berland v. Special School District No. 1, et al.*, 314 N.W.2d 809 (Minn.1981).[1] In *Berland* we held that under Minn.Stat. § 125.17, subd. 11, an elementary guidance counselor, also licensed to teach elementary classes, whose position had been discontinued was entitled to displace a less senior elementary teacher. In summarizing the result in *Berland*, we stated: "Berland must be given the benefit of his *seniority in the school district* by comparing his seniority with that of elementary teachers as well as with that of counseling department personnel." 314 N.W.2d at 813 (emphasis added).

Under corresponding language in the statute regarding unrequested leave of absence in school districts not in cities of the first class, seniority is clearly determined by date of employment by the school district.[2] In *Berland*, we recognized the legislative intent to give protection to tenured teachers in districts in cities of the first class as well:

With respect to termination, we believe the legislature intended to protect teachers in cities of the first class to the same extent as those teaching in cities not of the first class. Because the legislature recognized that schools in cities of the first class are more likely to be large enough to be organized into departments, it provided for termination within depart-

---

1. *Berland* was decided after the district court order from which this appeal is taken.

2. If the school board and the exclusive bargaining representative of the teachers fail to negotiate a plan for unrequested leave of absence, the following applies:

Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were *employed by the school district*. Minn.Stat. § 125.12, subd. 6b(b) (1980) (emphasis added).

ments but continued to allow qualified teachers to take other positions within the district.

314 N.W.2d at 812. We therefore hold that subdivision 11 of section 125.17 requires seniority of a principal to be determined from the date of employment in the school district.

In this situation, just as in *Berland,* computing seniority only within the department would have the effect of discouraging teachers from pursuing specialized training or attaining multiple licenses. *See,* 314 N.W.2d at 812. A teacher would be discouraged from accepting a position as principal if it meant losing all seniority in the school system. A principal in such a situation, while experienced and tenured in the school district, could not avoid demotions and terminations associated with declining enrollments. Such a result is inconsistent with the clear intent of Minn.Stat. § 125.17 to give preference to teachers who have been employed in the district longer periods of time. *See* 314 N.W.2d at 814.

Interpreting section 125.17 to require district-wide rather than departmental seniority does not nullify the departmental layoff provision of the statute as respondent contends. Respondent claims that no department position could ever be discontinued because the least senior teacher in the district must always be the first terminated. This is incorrect. In the language from *Berland,* terminations and demotions are still made "departmentally, by seniority." 314 N.W.2d at 812. Seniority, however, must be determined on a district-wide basis. If a position in the "department" of principal must be eliminated, the principal who has been employed the shortest period of time in the district will be the first to be discontinued. The decision is first made as to the department in which reductions must be made. The seniority of those in that department then must be determined from the date on which each person was employed by the district.

Nothing in the recognition that a principal has different duties, license, salary, and bargaining unit from a classroom teacher precludes the interpretation that the statute requires district-wide seniority. The school board acted on an erroneous theory of law and the district court erred in affirming that action.

Because of our holding on this issue, the further issue of the constitutionality of the statute does not arise.

Reversed.