In the Matter of the Application for
PERA Retirement Benefits of
Michael A. McGUIRE.

No. A07–2066.

Court of Appeals of Minnesota.

Oct. 7, 2008.

Lori Swanson, Attorney General, Jon K. Murphy, Assistant Attorney General, St. Paul, MN, for respondent Public Employees Retirement Association of Minnesota.

Patrick J. Kelly, Trevor S. Oliver, Christine Swanson, Kelly & Lemmons, P.A., St. Paul, MN, for appellant Michael A. McGuire.

Considered and decided by CONNOLLY, Presiding Judge; WORKE, Judge; and SCHELLHAS, Judge.

## O P I N I O N

WORKE, Judge.

Appellant challenges a determination by respondent Public Employees Retirement Association of Minnesota (PERA) that he is ineligible for retirement benefits because he did not complete a "continuous separation for 30 days from employment as a public employee" as required by Minn.Stat. § 353.01, subd. 28(a) (2006), and argues that PERA abused its discretion when it rescinded his annuity payments without considering his equitable-estoppel claim. Because appellant does not meet the statutory requirements for receiving PERA benefits and because PERA cannot be equitably estopped from rescinding unauthorized payments, we affirm.

## FACTS

In September 2004, appellant Michael A. McGuire notified his employer, the City of Bayport, that he intended to resign from his position as city administrator. The Bayport city council accepted appellant's resignation and agreed that the resignation would be effective April 30, 2005. Appellant was a member of the Public Employees Retirement Association of Minnesota (PERA) and, based on his years of service, PERA determined that he was eligible for unreduced early-retirement benefits. PERA began paying appellant retirement benefits on May 1, 2005. At that time, appellant's former wife also began receiving a portion of his PERA benefits pursuant to the terms of their dissolution decree.

In July 2007, PERA notified appellant that it intended "to cease the payment of PERA annuity benefits to you and your ex-spouse effective September 1, 2007" and that it also intended "to recover all PERA annuity payments paid to you and your ex-spouse," a total of $112,969.20. PERA explained that its reason for terminating and recovering benefits was that appellant had started working for Bayport as an independent contractor within 30 days after his resignation date. By providing paid services to Bayport within the 30–day period, appellant violated a statutory re-

quirement that he completely and continuously separate "for 30 days from employment as a public employee and from the provision of paid services to [the public] employer." Minn.Stat. § 353.01, subd. 28(a) (2006).

Appellant petitioned for review of the decision to terminate and rescind his benefits. In his petition, appellant explained that, despite his diligent efforts to prepare for retirement, he did not know that the 30–day separation requirement precluded work as an independent contractor. He explained that he was never "told about the 30–day separation requirement" even though he attended a PERA-sponsored pre-retirement session and met twice with PERA staff.

Appellant presented his case orally to the PERA board of trustees on September 13, 2007. At the meeting, the president of the board inquired whether appellant ever specifically asked PERA staff if his plan to work for Bayport as an independent contractor within a week of his retirement would create "a problem with [his] 30–day break." Appellant answered, "Actually, I did." Appellant further explained that he was confused by language in the PERA materials explaining that the separation requirement applied to "PERA-covered employment." Because he did not consider independent-contract work to be "PERA-covered employment," he assumed that he could begin work immediately as an independent contractor.

Following appellant's testimony, the board discussed the matter and determined that, because appellant did not completely and continuously separate for 30 days from his employment as a public employee, he was ineligible to receive retirement benefits and must repay all the PERA annuity payments he has received. The board did not address appellant's claim that PERA should be equitably estopped from rescinding appellant's benefits. This appeal follows.

## ISSUE

Did PERA abuse its discretion by rescinding appellant's PERA annuity payments without addressing his equitable-estoppel claim?

## ANALYSIS

■ Appellant argues that PERA acted arbitrarily and capriciously by rescinding his PERA annuity payments without addressing his equitable-estoppel claim. We disagree.

■ The PERA board of trustees administers a pension plan for public employees, and the board's decisions "shall not be disturbed unless found to be arbitrary and capricious." Minn.Stat. § 353.18 (2006). An agency's ruling is arbitrary and capricious if it

(a) relied on factors not intended by the legislature;

(b) entirely failed to consider an important aspect of the problem;

(c) offered an explanation that runs counter to the evidence; or

(d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*White v. Minn. Dep't. of Natural Res.*, 567 N.W.2d 724, 730 (Minn.App.1997) (quotation omitted), *review denied* (Minn. Oct. 31, 1997).

■ Minnesota courts have long held that estoppel cannot be applied when doing so would cause an agency to act outside the bounds of its authority. *See Bd. of Educ. of Minneapolis v. Sand*, 227 Minn. 202, 211, 34 N.W.2d 689, 695 (1948) (declining to estop school board from denying tenure because governing statute

did not authorize granting tenure). The supreme court adopted this rule out of concern that a contrary rule would lead to chaos: absent a prohibition against estoppel, states and municipalities would repeatedly find themselves bound by the unauthorized acts of officers and agents possessing only limited authority. *Alexander Co. v. City of Owatonna*, 222 Minn. 312, 324, 24 N.W.2d 244, 251–52 (1946), *overruled in part on other grounds by Johnson v. City of Plymouth*, 263 N.W.2d 603 (Minn.1978).

Over the years, the supreme court has to some extent revised its position regarding the application of estoppel against the government. The supreme court's interest in avoiding chaos and preserving governmental integrity initially led it to adopt a broad rule that equitable estoppel is not available against the government "when [it] acts in its prerogative of sovereignty[.]" *State v. Horr*, 165 Minn. 1, 4, 205 N.W. 444, 445 (1925). By contrast, estoppel could be applied against the government when it acts in a proprietary capacity, such as when it undertakes a commercial or industrial enterprise. *Id.* But the supreme court later rejected this distinction between sovereign acts and proprietary acts. *Mesaba Aviation Div. of Halvorson of Duluth, Inc. v. County of Itasca*, 258 N.W.2d 877, 880 (Minn.1977). In *Mesaba*, the supreme court held that, in applying estoppel, the equities of the circumstances should be examined rather than the character of the government's actions. *Id.* Thus, the supreme court abandoned one limitation on estoppel claims against the government.

The *Mesaba* court, however, explicitly retained the "authorized-act" limitation on estoppel claims against the government. *Id.* at 879. The court explained that an important consideration in determining whether the government should

be estopped is "[w]hether an administrative officer is authorized to make a representation." *Id.* The supreme court later clarified its post-*Mesaba* position by emphasizing that "where an agency has no authority to act, agency action cannot be made effective by estoppel." *Axelson v. Minneapolis Teachers' Ret. Fund Ass'n*, 544 N.W.2d 297, 299–300 (1996) (quotation omitted). Consequently, despite the supreme court's rejection of the sovereign-proprietor distinction in *Mesaba* and its emphasis on the equities of the circumstances, it did not alter the rule that, regardless of the equities involved, a government agency's unauthorized act cannot be made effective by estoppel.

Appellant does not dispute that he failed to meet the statutory requirements for receiving PERA annuity benefits. He concedes that, by returning to work for Bayport within 30 days of retiring from his position as city administrator, he failed to comply with the statutory requirement that he separate completely and continuously "for 30 days from employment as a public employee and from the provision of paid services to that employer." Minn. Stat. § 353.01, subd. 28(a); *see also* Minn. Stat. § 353.01, subd. 28(b) (2006) ("An individual who separates from employment as a public employee and who, within 30 days of separation, returns to provide service to a governmental subdivision as an independent contractor or as an employee of an independent contractor, has not satisfied the separation requirements under paragraph (a)."). Therefore, because appellant concedes that the payments he received were unauthorized and estoppel cannot be applied so as to cause an agency to make unauthorized payments, PERA cannot be estopped from rescinding the erroneous payments.

## D E C I S I O N

Because PERA cannot be equitably estopped from rescinding unauthorized payments, it did not act arbitrarily and capriciously by rescinding appellant's retirement benefits without addressing his equitable-estoppel claim.

**Affirmed.**